IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

BRUCE W. BRADSHAW                                                                PLAINTIFF

v.                                    CIVIL NO. 07-3024

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Bruce W. Bradshaw, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act).

**Procedural Background:**

The application for DIB presently before this court was filed on March 31, 2001, alleging an inability to work since April 4, 1993, due to back, neck and knee problems, carpal tunnel syndrome, diabetes, Hepatitis C and depression.[1] (Tr.60-62). An administrative hearing was held on February 13, 2002. On March 27, 2002, an ALJ issued an unfavorable decision with a finding that plaintiff was not disabled prior to March 31, 1999, plaintiff's date last insured. (Tr. 213-225). Plaintiff appealed this decision to the Appeals Council. On March 14, 2005, the Appeals Council granted plaintiff's request for review. (Tr. 231-233).

---

[1] Plaintiff also filed an application for supplemental security income (SSI) benefits and was found to be disabled under the Act as of March 1, 2001. (Tr. 18).

Pursuant to the Appeals Council's remand order a supplemental hearing was held on January 11, 2006. (Tr. 372-420). Plaintiff was present and represented by counsel at the hearing.

In a written decision dated September 29, 2006, the ALJ found that plaintiff had an impairment or combination of impairments that were severe prior to March 31, 1999. (Tr. 29). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 29). The ALJ determined that during the relevant time period plaintiff maintained the residual functional capacity (RFC) to perform sedentary work. More specifically, the ALJ determined plaintiff could lift and/or carry up to ten pounds occasionally, five pounds frequently; push and/or pull within the same weight limitations; stand and/or walk up to two hours out of an eight-hour workday; sit for six hours out of an eight-hour workday; occasionally bend, crouch, crawl and climb stairs; and frequently squat. (Tr. 29). With the help of a vocational expert, the ALJ found plaintiff could perform other work as an assembly worker and a driver. (Tr. 30).

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied on March 24, 2007. (Tr.6-9). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties filed appeal briefs and this case is before the undersigned pursuant to the consent of the parties. (Doc. #'s 6,7).

**Evidence Presented:**

At the supplemental administrative hearing before the ALJ on January 11, 2006, plaintiff testified he had obtained a seventh grade education. (Tr. 385). During the relevant time period plaintiff testified that he did not seek treatment due to the lack of finances. (Tr. 404). Plaintiff testified that prior to March 31, 1999, he could perform household tasks around the house but would need to pace himself. (Tr. 402).

The pertinent medical evidence dated during the relevant time period reflects the following. Plaintiff underwent a lumbar spine x-ray on April 6, 1993, that revealed mild degenerative changes at the lumbosacral level. (Tr. 171).

On May 10, 1993, plaintiff reported low back pain as a result of an on-the-job injury. (Tr. 142).  Dr. Ellen Ballard diagnosed plaintiff with lumbar strain rule out lumbosacral radiculopathy.

Plaintiff underwent a MRI of the lumbar spine on May 12, 1993. (Tr. 148). Dr. D.L. Roberson reported there was herniation of disc material at L5-S1 on the left side and that there might be some residual disc on the right side. Dr. Roberson noted very narrow spinal canal with short pedicles and spinal stenosis most marked at L3-4 and some narrowing was seen at L4-5 and L2-3.

On May 13, 1993, plaintiff reported that his back pain was worse. (Tr. 140). Dr. Ballard diagnosed plaintiff with S1 radiculopathy. Dr. Ballard restricted plaintiff to light duty work but noted plaintiff had not worked.

On May 13, 1993, plaintiff also underwent an electrophysiologic study of the left leg to look for any evidence of neuropathology that could explain plaintiff's left back and leg pain. (Tr.

146-147). Dr. B.R. Nichols reported a mildly abnormal electrophysiologic analysis of the left leg manifested by an absent left "H" reflex and rare positive sharp waves in the caudal lumbosacral paraspinous musculature. Dr. Nichols noted the most common explanation for an absent "H" reflex was S1 radiculopathy. Dr. Nichols noted that the fact that an EMG of the limb musculature remained normal meant that no significant axonal degeneration was occurring.

On May 20, 1993, plaintiff reported his back was "feeling lousy." (Tr. 139). After examining plaintiff, Dr. Ballard diagnosed plaintiff with S1 radiculopathy. Dr. Ballard restricted plaintiff to light duty work.

On May 27, 2003, plaintiff underwent an examination by Dr. J.R. LaMorgese. (Tr. 144). Plaintiff complained of back, left hip and thigh pain. Plaintiff reported the symptoms began after he fell from the back of a truck. Plaintiff reported if he stood for a long time he would experience tingling and weakness in his legs. Upon examination, Dr. LaMorgese noted no kyphosis, scoliosis or paravertebral muscle spasm. Plaintiff exhibited mild tenderness in the low back. Forward flexion was limited due to pain. Dr. LaMorgese noted plaintiff had a negative SLR in the sitting position. Dr. LaMorgese noted plaintiff had normal strength throughout. Plaintiff had absent Achilles' reflexes bilaterally and patella reflexes were +1. Plaintiff's sensation was grossly intact to touch and vibration. Dr. LaMorgese diagnosed plaintiff with lumbar radiculopathy pain on the left. (Tr. 145). Dr. Lamorgese did not think plaintiff should undergo surgery on his low back. Dr. LaMorgese recommended plaintiff continue with only one anti-inflammatory agent. Dr. LaMorgese discontinued plaintiff's Zoloft noting that no depression appeared to be present. Dr. LaMorgese opined plaintiff would be a good candidate for an epidural cortisone injection.

On May 29, 1993, plaintiff underwent a lumbar epidural cortisone injection at the L4-5 interspace. (Tr. 145).

On June 1, 1993, plaintiff reported his low back pain was worse since his injection. (Tr. 138). Plaintiff requested different pain medications. Dr. Ballard prescribed Naproxyn and Tylenol #3.

Notes dated June 3, 1993, report plaintiff called in to Dr. LaMorgese's office to report that his back was stiff and sore. (Tr. 145). Plaintiff reported that his pain was no better.

On June 8, 1993, plaintiff reported he continued to experience pain in his low back and into his left hip. (Tr. 127). After examining plaintiff, Dr. Ballard diagnosed plaintiff with lumbar strain.

On June 9, 1993, plaintiff started occupational therapy and physical therapy which lasted through June 29, 1993. (Tr. 130-133).

On June 14, 1993, plaintiff reported his back pain was the same. (Tr. 126). Dr. Ballard noted plaintiff reported pain with range of motion of the lumbar spine. Dr. Ballad noted plaintiff had normal strength and reflexes. Dr. Ballard recommended plaintiff perform only light duty work activity. (Tr. 134). Dr. Ballard noted a therapist was going to discuss plaintiff's seating system.

On June 18, 1993, plaintiff reported his back pain was about the same. (Tr. 125). Dr. Ballard examined plaintiff and recommended plaintiff perform only light duty work for a few hours a day. Plaintiff was instructed not to lift more than ten pounds.

On June 22, 1993, plaintiff reported calf pain in his left leg. (Tr. 124). Plaintiff reported he forgot to report this pain to Dr. Ballard. The examiner recommended plaintiff avoid aggravating activities and to report to Dr. Ballard on Tuesday.

On June 29, 1993, plaintiff reported his calf was feeling better but he continued to have a back ache. (Tr. 123). After examining plaintiff, Dr. Ballard diagnosed plaintiff with lumbar strain and degenerative disc disease. Dr. Ballard recommended plaintiff perform only light duty activity.

On July 30, 1993, plaintiff reported his low back and calf pain were the same. (Tr. 121). Dr. Ballard noted plaintiff was taking Tylenol #3 once a day. Dr. Ballard opined plaintiff could return to full duty work.

On August 27, 1993, plaintiff reported constant soreness and stiffness in his low back. (Tr. 120). Plaintiff reported that both legs felt funny and that he was having problems at work due to his symptoms. Dr. Ballard diagnosed plaintiff with lumbar strain and prescribed Naproxyn and Elavil.

On September 10, 1993, plaintiff reported constant pain in his low back, stomach pain and problems with sitting. (Tr. 119). Plaintiff reported that his left leg also felt like it was going to sleep. After examining plaintiff, Dr. Ballard diagnosed plaintiff with lumbar strain.

On September 27, 1993, plaintiff reported his pain was the same. (Tr. 118). Dr. Ballard restricted plaintiff to light duty work that did not require stooping or bending or lifting more than ten pounds.

On October 7, 1993, plaintiff reported his back and leg pain were about the same. (Tr. 117).

On June 5, 1997, plaintiff presented to Dr. John W. Allen's office. (Tr. 150). Plaintiff reported that he had Hepatitis C. Plaintiff complained of headaches, right abdominal and back pain, fatigue and swelling and pain in his hands. Plaintiff reported his medication consisted of Aspirin.

Progress notes dated June 16, 1997, report plaintiff was not happy because he was not told what his medical problem was. (Tr. 149). Plaintiff was told if he felt good enough to work he should. It was noted that plaintiff had not paid his bill and that plaintiff had been nothing but rude to the office staff. On June 18, 1997, Dr. Allen sent plaintiff a letter indicating he would treat plaintiff for emergency care for the next thirty days but that plaintiff must find a new care provider.

On October 29, 1998, plaintiff presented to the Yakima Valley Farm Workers Clinic complaining of pain in his left hip and leg. (Tr. 341). Plaintiff also reported pain and swelling in his hands. Plaintiff reported these symptoms began after he tripped and fell one week ago. Plaintiff was examined and diagnosed with a contusion of the low back and painful swollen hands. Plaintiff was prescribed medication and told to return for a follow-up appointment in two weeks.

After reviewing all of plaintiff's medical records, Dr. Phillip L. McCown, an orthopedic doctor, gave his opinion as to plaintiff's capabilities. (Tr. 346).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 404.1520(a)- (f). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

**Discussion:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on March 31, 1999. (Tr. 19). Accordingly, the overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of April 4, 1993, his alleged onset date of disability, through March 31, 1999, the last date he was in insured status under Title II of the Act.

In order for plaintiff to qualify for disability benefits he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id. at* 1169.

We now address the ALJ's assessment of plaintiff's subjective complaints during the time period in question. In disability determinations, credibility assessments are the province of the

ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). This court will not substitute its judgment for that of the trier of fact, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003). We believe the ALJ adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and conclude there is substantial evidence supporting the ALJ's determination that plaintiff's complaints were not fully credible.

With regard to plaintiff's alleged disabling impairments, the record reveals that during the relevant time period plaintiff sought treatment for chronic low back pain. The ALJ determined plaintiff's back impairment, along with a left knee impairment, were severe during the relevant time period. The ALJ further found both of these impairments were exacerbated by plaintiff's obesity.

With regard to plaintiff's back pain, the record reveals plaintiff sought treatment for a back injury that occurred as a result of an on-the-job fall in April of 1993. Plaintiff sought treatment for this low back pain with radiation into his left leg consistently between April of 1993, through October 7, 1993. This treatment was conservative in nature. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998) (conservative treatment inconsistent with disabling pain). After

October of 1993, plaintiff failed to seek treatment of his alleged disabling back pain again until October of 1998, when he reported he had fallen over an air compression and landed on his tail bone. At the time, plaintiff was diagnosed with a contusion of the back and prescribed medication. Plaintiff did not seek treatment for back pain again until after the expiration of his insured status. Thus, while plaintiff may indeed have an injury in his lower back and experience some degree of pain, the medical evidence indicates that his condition was not of a disabling nature prior to March 31, 1999. *See Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain).

With regard to plaintiff's left knee pain, the ALJ noted that plaintiff did not seek treatment for left knee problems until September of 1999. (Tr. 26). However, the medical evidence indicates plaintiff had undergone knee surgery in both knees prior to the alleged onset date. The ALJ noted in September of 1999, plaintiff was diagnosed with moderately severe degenerative arthropathy of the left knee. (Tr. 170). We would point out that plaintiff denied any problems with his lower extremities when he sought treatment for arm and hand pain and numbness in December of 1999. (Tr. 182). After reviewing all the medical evidence, including the assessment made by Dr. McCown, the ALJ included limitations regarding plaintiff's knee when determining plaintiff's RFC during the relevant time period. We find substantial evidence to support the ALJ's determination that prior to March 31, 1999, plaintiff had a severe but not disabling knee impairment.

Plaintiff also alleges disabling depression, diabetes, Hepatitis C, neck pain and carpal tunnel syndrome (CTS). We note that during the relevant time period plaintiff's Zoloft was

11

discontinued because there was no depression noted in April of 1993. Plaintiff testified that he was depressed in 1993 through 1995 but there is no indication plaintiff sought treatment for any mental related issue during that period in time. Plaintiff also denied depression on May 11, 2000. This court realizes depression is a fluid impairment but there is no evidence plaintiff had any problems with any mental impairment during the relevant time period. We find substantial evidence of record to support the ALJ's determination that plaintiff did not suffer from severe depression during the relevant time period.

Plaintiff was diagnosed with diabetes in April of 2000. (Tr. 174). This was clearly not during the relevant time period. Substantial evidence supports the ALJ's determination that plaintiff did not have a severe diabetic impairment during the relevant time period.

With regard to plaintiff's Hepatitis C, plaintiff did tell Dr. Allen that he had been diagnosed with Hepatitis C when he sought treatment for fatigue, swelling hands, abdominal pain and back pain in 1997. However, plaintiff was not treated for his Hepatitis C. Plaintiff also testified at the hearing in January of 2006, that he was told that his Hepatitis C symptoms were not bad enough to treat compared to the side effects he would suffer should he undergo treatment. The ALJ also noted that Dr. Allen told plaintiff if he felt up to working he should. Based on the entire evidence of record we find substantial evidence to support the ALJ's determination that plaintiff's Hepatitis C was not a severe impairment during the relevant time period.

With regard to plaintiff's CTS and neck pain, plaintiff did not seek treatment for these problems during the relevant time period. Plaintiff reported he had undergone carpal tunnel releases prior to the alleged onset date and had work for years following those surgeries. Plaintiff

12

did not seek treatment for CTS until December of 1999. (Tr. 182). At that time, plaintiff denied real neck pain. In January of 2000, plaintiff reported he had been experiencing pain, numbness and weakness in both hands for the past two and a half months. (Tr. 158). There is evidence that in November of 2000 plaintiff reported numbness in his elbows for the past two years. (Tr. 161). However, plaintiff did not seek treatment for this alleged elbow numbness until well over a year after his insured status expired. After thoroughly reviewing the record, we find substantial evidence supporting the ALJ's determination that plaintiff's CTS and neck pain were not severe impairments during the relevant time period.

Although plaintiff contends that his failure to seek medical treatment is excused by his inability to afford treatment during the relevant time period, plaintiff has put forth no evidence to show that he has sought low-cost medical treatment or been denied treatment due to his lack of funds. *Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). There is also evidence showing plaintiff continued to smoke throughout the relevant time period. As such, we cannot say that his financial situation prevented him from receiving medical treatment.

Plaintiff's reports concerning his daily activities are also inconsistent with his claim of disability prior to March 31, 1999. Plaintiff testified that prior to his date last insured, while performing at his own pace, he could perform household chores which included cooking, vacuuming, and washing laundry. (Tr. 402-403). Plaintiff estimated that prior to March 31, 1999, he could sit for four hours, stand for fifteen to twenty minutes and walk one-quarter of a mile. Plaintiff also reported he had been doing "a lot of walking" when he sought treatment for blood

13

sugar problems in May of 2000. (Tr. 193). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain prior to March 31, 1999. *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability); *See Polaski* at 1322.

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Plaintiff argues that the ALJ did not adequately address plaintiff's obesity. Although the Commissioner has deleted the listing for obesity, consideration must be given to the condition, in combination with others. The regulations provide:

> *Q. The effects of obesity.* Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately.

> Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

*20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00(Q).* Here, the ALJ's decision indicates the ALJ addressed the impacts of plaintiff's obesity. (Tr. 25, 417-419). Accordingly, we conclude that the ALJ has properly considered the additional and cumulative effects of plaintiff's obesity, in combination with his other musculoskeletal impairments, as required by the regulations.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be

15

supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

   In finding plaintiff able to perform sedentary work, the ALJ considered plaintiff's subjective complaints, the medical records of his treating and examining physicians, and the evaluation of a non-examining consultant.[2] Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's treating and examining physicians placed no restrictions on his activities during the relevant time period that would preclude performing the RFC determined. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on our above discussion of the medical evidence, plaintiff's failure to seek continued medical treatment and plaintiff's daily activities, we believe substantial evidence supports the ALJ's RFC assessment.

   We also find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's interrogatory responses constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude him from performing other work as an assembly worker or a driver. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

---

[2] Plaintiff argues the ALJ improperly found plaintiff could perform light duty work. The ALJ's decision clearly states he found plaintiff able to perform sedentary work.

AO72A
(Rev. 8/82)

Finally, we reject plaintiff's contention that the ALJ failed to fully and fairly develop the record. While an ALJ is required to develop the record fully and fairly even when a claimant has an attorney, *See Freeman v. Apfel,* 208 F.3d 687, 692 (8th Cir.2000) (ALJ only must order consultative examination when it is necessary for an informed decision), the record before the ALJ contained the evidence required to make a full and informed decision. *See Strongson v. Barnhart,* 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 19th day of February 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

17